IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**NANCY GOLD,**

      Plaintiff,

vs.                                         Civ. No. 99-1137 DJS/WWD

**RICK GRIEGO, et al.,**

      Defendants.

## MEMORANDUM OPINION and ORDER

    **THIS MATTER** comes before the Court on Defendants' Levi Borunda, Donato Sena and Board of County Commissioners of San Miguel County's Motion to Dismiss Fair Housing Act Claims filed January 6, 2000 (Docket No. 12) and Motion to Dismiss Fair Housing Act Claims against Defendants Griego and Martinez filed January 18, 2000 (Docket No. 21. Defendants move, pursuant to Federal Rule of Civil Procedure 12(b)(6) for dismissal with prejudice of the Fair Housing Act (FHA) claims in Count IV of Plaintiff's Amended Complaint. The Court having reviewed the pleadings and being otherwise advised in the premises finds that Defendants' Motions are well taken and will be granted.

    Plaintiff filed her Amended Complaint on November 9, 1999. She alleges that in late 1996 she was a pretrial detainee at the San Miguel County Detention Center. During that time she claims that Defendant Griego sexually assaulted her several times. She also alleges that the other named Defendants assisted in the

assaults or failed to prevent them.  In Count IV Plaintiff alleges that these "actions constitute discrimination on the basis of sex in the provision of services or facilities in connection with housing in violation of 42 U.S.C. Sec. 3604." Complaint, Para. 46. Defendants assert that the Plaintiff cannot establish the *prima facie* elements of a housing discrimination claim.  Specifically Defendants allege that Plaintiff cannot prove that the San Miguel County Detention Center is a "dwelling" within the meaning of 42 U.S.C. Sec. 3602(b) or that Defendants discriminated against her in providing services in connection with the sale or rental of a "dwelling."  Further, Defendants argue that if the detention center is not a "dwelling", Plaintiff cannot recover against Defendant Borunda under Sec. 3617 of the FHA.

A moving party is entitled to have a claim dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her claims] which would entitle [her] to relief." Conley v. Gibson, 355 U.S. 41, 46-47(1959); see also Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991)("The complaint will not be dismissed unless it appears that the plaintiff cannot prove facts entitling him to relief.").  The issue in resolving a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether she is entitled to offer evidence to support her claims. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

The parties agree that Plaintiff must prove at least two

2

elements to establish a *prima facie* case. She must prove that: (1) that she was a member of a protected class; and (2) that she occupied a "dwelling" as the term is defined in 42 U.S.C. Sec. 3602(b). To recover Plaintiff must prove that the San Miguel County Detention Center falls within the statutory definition of "dwelling."

There is nothing in the language of the FHA or its legislative history to support the proposition that the Act is intended to protect an inmate in a detention center. The FHA defines dwelling as:

> any building, structure, or portion thereof which is occupied as, or designed or **intended for occupancy as, a residence** by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof.

42 U.S.C. Sec. 3602(b)(emphasis added).[1]

"Residence", though central to this issue, is not defined in the Act. In determining whether a structure is "intended for occupancy as a residence" courts have used the ordinary meaning approach and the Webster's dictionary definition of "residence." The District Court in <u>United States v. Hughes Memorial Home</u>, 396 F. Supp. 544, 549 (W.D. Va. 1975) noted that Webster's dictionary defines "residence" as "a temporary or permanent dwelling place, abode or habitation to which one intends to return as distinguished

---

[1]"Family" as used in Sec. 3602(b) may include a single individual. <u>See</u> 42 U.S.C. Sec. 3602(c).

from the place of temporary sojourn or transient visit." The Court found that a children's home was a "dwelling." Other courts have applied the same ordinary meaning approach. See <u>United States v. Columbus Country Club</u>, 915 F.2d 877, 881 (3rd Cir. 1990)(citing <u>Hughes</u> and applying same definition), <u>cert. denied</u>., 501 U.S. 1205 (1991); <u>Hovsons, Inc. v. Township of Brick</u>, 89 F.3d 1096, 1102 (3rd Cir. 1996)(same); <u>Woods v. Foster</u>, 884 F. Supp. 1169, 1193 (N.D. Ill. 1995)(same); <u>Baxter v. City of Belleville</u>, 720 F. Supp. 720, 731(S.D.Ill. 1989)(same); <u>Patel v. Holley House Motels</u>, 483 F. Supp. 374, 381(S.D. Ala. 1979)(same).

None of the reported cases involved detention centers or any other type of incarceration facility. Rather a common thread throughout the case law finding particular structures to be "dwellings" is that the structure is where people want and chose to live. Contrary to the definition of residence, Plaintiff would not return nor could she return to the detention center if she were not required to do so. Legal authority appears to be silent on this point, that is, one inviting himself or herself, into a place of incarceration to serve a period of confinement. Indeed, authority is to the contrary. The reported cases deal with the quest to be free of confinement.

The legislative history supports this position. The purpose and reason for the Fair Housing Act of 1968 is set out in the statements of Senator Mondale, the author of the legislation. His remarks demonstrate that the primary congressional intention in

4

passing the legislation was to break up residential concentrations of minorities and to foster integrated living patterns. See 114 Cong. Rec. 4322 (1968)("rapid, block-by-block expansion of the ghetto will be slowed and replaced by truly integrated and balanced living patterns"). Congress also intended to promote freedom of choice in housing and to prevent humiliation resulting from racially discriminatory housing practices. Id. at 5643 (Title VIII gives blacks freedom to move where they will and "removes the opportunity to insult and discriminate against a fellow American because of his color").

In 1988 the FHA was amended to provide an effective enforcement system, and extended the principle of equal housing opportunity to handicapped persons and to families with children. The legislative history of these amendments is instructive. The House Report states that the FHA was enacted "following urban unrest of the mid 1960s and in the aftermath of the assassination of the Rev. Dr. Martin Luther King, Jr." 1988 U.S. Code Cong. & Admin. News 2176. It further states that:

> [T]wenty years after the passage of the Fair Housing Act, discrimination and segregation in housing continue to be pervasive. The Department of Housing and Urban Development estiamtes(sic) that 2 million instances of housing discrimination occur each year."

Id. The House Report asserts that handicapped persons and families with children "have been the victims of unfair and discriminatory housing practices." Id. at 2174. "These persons have been denied housing because of misperceptions, ignorance, and outright

5

prejudice." Id. at 2179.  And finally, in discussing the extension to families with children the reports states the "Congress and the courts have a long tradition of defining and protecting families as perhaps the most fundamental social institution of our society." Id. at 2180.  Again, this legislative history makes it clear that Congress intent was to protect a person's home.

Moreover, it is clear in the decisions of the courts that have found the protections of the FHA to apply, that the courts were protecting a person's home.  Hovsons, 89 F.3d at 1102 (nursing home); Lauer Farms, Inc. v. Waushara County Board of Adjustment, 986 F. Supp. 544 (E.D.Wis. 1997)(migrant farm works' camps); Woods, 884 F. Supp. at 1173(homeless shelter); Baxter, 720 F. Supp. at 726, 731(hospice of HIV-positive persons is a "home for HIV victims).  Structures found not to be within the scope of the FHA are a motel, Patel, 483 F. Supp. at 381; vacant land held for commercial use, U.S. v. Mintzes, 304 F. Supp. 1305 (D.Md. 1969); and a grocery store, Matsunaga v. Century 21, slip op., No. 84C 11018, 1985 WL 1113 (N.D. Ill. 1985).  Using its ordinary meaning and common sense a detention center is not a home.

A detention center clearly does not fall within the statutory definition of "dwelling."  Plaintiff cannot prevail under her

asserted FHA claim.  For all the foregoing, Count IV of Plaintiff's Amended Complaint is dismissed with prejudice.

**IT IS SO ORDERED.**

_____
Don J. Svet
**UNITED STATES MAGISTRATE JUDGE**